# HARMON LAW OFFICES, P.C.

150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
TEL (617) 558-0500
FAX (617) 244-7304
Business Hours: Monday-Friday 8:00 AM-to 5:30 PM
*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

***VIA CERTIFIED MAIL (Return Receipt Requested)***

April 1, 2026

U.S. Attorney, District of NH
55 Pleasant St # 352
Concord, NH 03301

**Re:    Federal National Mortgage Association v TD Bank, N.A., et al**
**Rockingham Superior Court, Docket No.: 218-2026-CV-00358**

Dear Sir or Madam:

Enclosed please find a copy of the following with respect to the above-referenced matter:

1.  Summons and Notice of Defendant; and
2.  Bill of Interpleader.

These documents are being served upon you pursuant to 28 U.S.C. § 2410(b) concerning actions in state courts.

Please contact me with any questions or concerns.

Very truly yours,
Harmon Law Offices, P.C.

Thomas J. Santolucito , Esq.

Enclosures

**Exhibit**

A

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH  03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov

## SUMMONS IN A CIVIL ACTION

Case Name:      **Federal National Mortgage Association v TD Bank, N.A., et al**
Case Number:    **218-2026-CV-00358**

Date Complaint Filed: March 19, 2026

A Complaint has been filed against Joseph H. Mastromarino; TD Bank, N.A.; United States of America in this Court. A copy of the Complaint is attached.

### The Court ORDERS that ON OR BEFORE:

| | |
|---|---|
| May 10, 2026 | Federal National Mortgage Association shall have this Summons and the attached Complaint served upon Joseph H. Mastromarino; TD Bank, N.A.; United States of America by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| May 31, 2026 | Federal National Mortgage Association shall electronically file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | Joseph H. Mastromarino; TD Bank, N.A.; United States of America must electronically file an Appearance and Answer or other responsive pleading form with this Court.  A copy of the Appearance and Answer or other responsive pleading must be sent electronically to the party/parties listed below. |

**Notice to Joseph H. Mastromarino; TD Bank, N.A.; United States of America:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:

| | |
|---|---|
| Thomas J. Santolucito, ESQ | Harmon Law Offices PC 150 California Street Newton MA 02458 |
| TD Bank, N.A. | 2035 Limestone Road Wilmington DE  19808 |
| Joseph H. Mastromarino | 46 Mace Road Hampton NH  03842 |
| United States of America | US Attorney District of NH 55 Pleasant St # 352 Concord NH 03301 |

US ATTORNEY'S OFFICE NH
APR 05 2026 AM 11:22

BY ORDER OF THE COURT

March 26, 2026

Patrice D. Touma
Clerk of Court

(1146)

NHJB-2678-Se (07/01/2018)

This is a Service Document For Case: 218-2026-CV-00358
Rockingham Superior Court

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH  03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov

## FEDERAL NATIONAL MORTGAGE ASSOCIATION
## INSTRUCTIONS FOR SERVICE
## BY THE SHERIFF'S DEPARTMENT

Case Name:     **Federal National Mortgage Association v TD Bank, N.A., et al**
Case Number:   **218-2026-CV-00358**

**Instructions for:** Federal National Mortgage Association

The attached Summons must be sent to the Sheriff's Department for service.  Service must be completed on or before **May 10, 2026**.
**Further action is required by you**
**You must:**
- **Print two copies of the Summons per defendant**
- **Print two copies of the Notice to Defendant per defendant**
- **Print two copies of the Complaint filed with the Court per defendant**
- **Make two packets for service.  Each packet should contain:**
    - **One Summons**
    - **Once Notice for Defendant**
    - **One Complaint filed with the Court**
- **Mail or hand deliver the packets to the Sheriff's Department in the county where each defendant resides.**

**Sheriff Departments in New Hampshire:**

Belknap County Sheriff's Department:
Carroll County Sheriff's Department:
Cheshire County Sheriff's Department:
Coos County Sheriff's Department:
Grafton County Sheriff's Department:

Hillsborough County Sheriff's Department:
Merrimack County Sheriff's Department:
Rockingham County Sheriff's Department:
Strafford County Sheriff's Department:
Sullivan County Sheriff's Department:

**\*If one or more of the parties resides out of state, please click here for the requirements\***
Service must be made upon the defendant before **May 10, 2026**.

If the Sheriff is unable to complete service by **May 10, 2026** you will receive a "Notice of Incomplete Service" from the Sheriff's Department.  You may request that new paperwork be issued by electronically filing a Request for Documents.  There is a fee for this request.

The Sheriff will mail the 'Return of Service' to you.  You MUST electronically file the 'Return of Service' with the court by May 31, 2026.

**If service is not made as directed, no further action will occur and the case may be dismissed by the court.**

NHJB-2678-Se (07/01/2018)

# Important Service Information for Sheriff

<u>Do not file this with the court</u>
Provide this information to the Sheriff's Department.
See Instructions for Service for more information.
**PLEASE PRINT CLEARLY**

Date: _____          Case #: _____

**Who are you requesting to be served?**
Please provide whatever information you know

Name: _____

Address for service (no P.O. boxes):

_____          APT #: _____

_____

Home phone #: _____          Cell phone #: _____

Sex: ☐ Male   ☐ Female          Race: _____

Last 4 digits of SS#: xxx-xx- _____ _____ _____ _____          D.O.B. _____

Work name & address:

_____

Special instructions for service (i.e. directions, best time to serve, cautions, etc.):

_____

_____

Vehicle description/license plate:

_____

**Your Information:**
Name (please print): _____

Residential address:                              Mailing address:

_____          _____

_____          _____

Phone number to contact you during business hours:

_____ Alternate #: _____

_____
Signature

♦IN-HAND SERVICE WILL INCUR EXTRA COSTS DUE TO ADDITIONAL TRAVEL♦

**SHERIFF OFFICE USE ONLY: (This will vary by Sheriff's Office)**

| | | |
|---|---|---|
| Fees Paid: $_____ Cash #: _____ Check#: _____ |
| Id#: _____ Waiver: _____ Money Order#: _____ Credit Card: _____ |
| Sheriff File # _____ Authorization #: _____ |

<u>Instructions for filing the Return of Service</u>:

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: <u>www.courts.nh.gov</u>, select the Electronic Services icon and then select the option for a self-represented party.

1.  Select "I am filing into an existing case".  Enter 218-2026-CV-00358 and click Next.

2.  When you find the case, click on the link follow the instructions on the screen.  On the "What would you like to file?" screen, select "File Other Document" and choose "Return of Service".

3.  Scan the Return of Service packet and follow the instructions in the electronic filing program to upload the Return of Service to complete your filing.

4.  If the sheriff was unable to serve the paperwork, you can request new paperwork by filing a Request for Documents.  On the "What would you like to file?" screen, select "File Other Document" and choose "Request for Reissued Summons" from the menu and upload the Request for Documents form.


**FAILURE TO FILE THESE DOCUMENTS MAY RESULT IN YOUR CASE BEING DISMISSED.**

<u>March 26, 2026            </u>                    <u>Patrice D. Touma                        </u>
Date                                        Clerk of Court


You can access documents electronically filed through our Case Access Portal by going to <u>https://odypa.nhecourt.us/portal</u> and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case.  After your information is validated by the court, you will be able to view case information and documents filed in your case.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH  03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
https://www.courts.nh.gov

## NOTICE TO DEFENDANT

Case Name:  **Federal National Mortgage Association v TD Bank, N.A., et al**
Case Number:  **218-2026-CV-00358**

You have been served with a Complaint which serves as notice that this legal action has been filed against you in the **Rockingham Superior Court.**  Review the Complaint to see the basis for the Plaintiff's claim.

Each Defendant is required to electronically file an Appearance and Answer 30 days after service. You may register and respond on any private or public computer.  For your convenience, there is also a computer available in the courthouse lobby.

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.nh.gov, select the Electronic Services icon and then select the option for a self-represented party.

1.  Complete the registration/log in process.  Click Register and follow the prompts.

2.  After you register, click Start Now.  Select **Rockingham Superior Court** as the location.

3.  Select "I am filing into an existing case".  Enter **218-2026-CV-00358** and click Next.

4.  When you find the case, click on the link and follow the instructions on the screen.  On the "What would you like to file?" screen, select "File a Response to Civil Complaint".  Follow the instructions to complete your filing.

5.  Review your Response before submitting it to the court.

**IMPORTANT:** After receiving your response and other filings the court will send notifications and court orders electronically to the email address you provide.

A person who is filing or defending against a Civil Complaint will want to be familiar with the Rules of the Superior Court, which are available on the court's website: www.courts.nh.gov.

Once you have registered and responded to the summons, you can access documents electronically filed by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

If you have questions regarding this process, please contact the court at 1-855-212-1234.

File Date: 3/19/2026 3:50
Rockingham Superior Co
E-Filed Docum

# THE STATE OF NEW HAMPSHIRE

**ROCKINGHAM, ss.**                                    **SUPERIOR COURT**
                                                       **DOCKET NUMBER:**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION,**    218-2026-CV-00358
**Plaintiff,**

**v.**

**TD BANK, N.A., THE UNITED STATES OF AMERICA AND JOSEPH H. MASTROMARINO,**

**Defendants/Parties-in-Interest/Possible Claimants**

## BILL OF INTERPLEADER

Federal National Mortgage Association ("Plaintiff" or "Fannie Mae"), brings this action to dispose of surplus proceeds following a mortgage foreclosure of a mortgage of 46 Mace Road, Hampton, NH 03842.   The property sold at public auction at a price in excess of the mortgage debt.   Despite diligent efforts, Fannie Mae has been unable to reach an agreement with a subordinate lienholder to arrange payment of the surplus funds.   Moreover, the United held a very substantial tax lien against the Property and there is a reasonable likelihood that it may dispute payment of the surplus proceeds to any other parties.   Fannie Mae requests that the Court award Fannie Mae its reasonable fees and costs for bringing this action, dismiss it as a party to this case and direct the distribution of the surplus proceeds.

## PARTIES

1.  Plaintiff Federal National Mortgage Association has a mailing address of 3900 Wisconsin Ave NW, Suite 125, Washington, DC 19462.

2.  Defendant TD Bank, N.A. has a mailing address of 2035 Limestone Road, Wilmington, DE 19808.

3.  Defendant Joseph H. Mastromarino has a last known address of 46 Mace Road, Hampton, NH 03842.

4.  The Defendant United States of America has service addresses of:

  a.  U.S. Attorney, District of NH
      55 Pleasant St # 352
      Concord, NH 03301

  b.  U.S. Department of Justice
      Tax Division
      P.O. Box 55, Ben Franklin Station
      Washington, DC 20044

  c.  Internal Revenue Service
      Advisory Group Manager
      380 Westminster St, 4th Floor
      Providence, RI 02903

  d.  Office of the Attorney General of the United States
      US Department of Justice
      950 Pennsylvania Avenue, NW
      Washington, D.C. 20530

## FACTS

5.  On or about March 31, 2005, Joseph H. Mastromarino  ("the Borrower") acquired title to 46 Mace Road, Hampton, NH 03842 ("the Property") by Commissioner's Deed recorded with the Rockingham County Registry of Deeds ("the Registry") at Book 4460, Page 1885. A true and accurate copy of this deed is attached as **Exhibit A.**

6.  On April 20, 2015, the Borrower granted a Mortgage of the Property to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for New Penn Financial, LLC to secure payment of a Note in the original principal amount of $449,500.00.  The Mortgage

is recorded with the Registry at Book 5619, Page 693 (the "Mortgage"). A true and accurate redacted copy of the Mortgage is attached as **Exhibit B.** [1]

7. On or about August 3, 2023, MERS assigned the Mortgage to Fannie Mae by Assignment recorded with the Registry at Book 6500, Page 428. A true and accurate redacted copy of this Assignment is attached as **Exhibit C.**

8. On October 6, 2025, Plaintiff conducted a public foreclosure sale of the Proerty following a default by the Borrower. A third party was the highest bidder and purchased the property for $467,000.00. True and accurate copies of the Foreclosure Deed and Affidavit evidencing such sale, are attached as **Exhibit D.**

9. Following the completion of the foreclosure sale and the satisfaction of the indebtedness owed to the Plaintiff, Fannie Mae is in possession of surplus proceeds totaling $208,327.10 (including accrued interest) (the "Surplus Funds").[2]

10. The following parties held interests in the Property and may be entitled to some or all of the Surplus Funds:

    a. TD Bank, N.A. ("TD Bank") was the holder of a mortgage from the Borrower in the original amount of $160,000 as recorded with the Registry at Book 6190, Page 1767. A true and accurate redacted copy of the relevant pages of this Mortgage are attached as **Exhibit E.**

    b. The United States of America was the holder of a Notice of Federal Tax Lien against the Borrower in the face amount of $829,567.11 as recorded with the

---

[1] For privacy reasons, the loan number and all potential personal identifying information (i.e. social security numbers, account numbers, etc.) appearing in the exhibits, have been redacted.

[2] The Surplus Funds will be deposited with the Court upon the docketing of this case.

Registry at Book 6217, Page 2607.  A true and accurate redacted copy of this Lien is attached as **Exhibit F.**

   c.  Joseph H. Mastromarino , the former owner of the Property.

11.   Prior to commencing this action, counsel for the Plaintiff communicated with counsel for TD Bank in an effort to arrange payment of its lien.

12.   Despite Fannie Mae's best efforts, it was unable to reach an agreement with TD Bank to arrange payment of its subordinate mortgage, while protecting Fannie Mae against any potential adverse claims to the Surplus Funds (if any).

13.   Due to its inability to reach an agreement with TD Bank, Fannie Mae is unable to make a proper distribution of the surplus funds to the remaining defendants and risks liability if it attempts to do so.

## COUNT ONE – INTERPLEADER

14.   Plaintiff repeats and realleges the factual allegations set forth in the preceding paragraphs.

15.   Plaintiff has attempted to distribute the surplus proceeds informally; however, it was unable to reach an agreement with TD Bank to arrange for payment of the surplus proceeds.

16.   In the absence of an agreement with TD Bank, Fannie Mae cannot make any further distribution(s) of the surplus funds and risks adverse claims and possible liability if it attempts to do so.

17.   The Plaintiff is a disinterested party and has no interest in the distribution of the surplus, other than recovery of its attorneys' fees and costs associated with this action and any efforts to distribute the surplus funds.

**WHEREFORE**, Federal National Mortgage Association, respectfully requests that this Honorable Court:

1.     Order that all Defendants appear and prove their claims, if any, to the surplus funds;

2.     Award the Plaintiff its costs, expenses and reasonable attorneys' fees incurred in connection with this action;

3.     Dismiss Fannie Mae as a party to this action;

4.     Determine the rights of the Defendants as to the surplus funds to be paid into the Court; and

5.     Grant any other and further relief as the Court deems just and proper.

Respectfully submitted,
**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
By its Attorneys,

**/s/ Thomas J. Santolucito**

Thomas J. Santolucito, Esq.
NH Bar ID #15166
HARMON LAW OFFICES, P.C.
150 California Street
Newton, MA  02458
Phone: (617) 558-8437
tsantolucito@harmonlaw.com

Dated:  March 19, 2026

**Please Note:**
**The Documents Appended Hereto Have Been Redacted**
**To Prevent Any Possible Disclosure of Personal and Private Information**

**Any Document Marked As A True And Correct Copy**
**Has Also Been Redacted For This Purpose**

# Exhibit A

BK 4460 PG 1885

022168

2005 APR -5 AM 8: 37

ROCKINGHAM COUNTY
REGISTRY OF DEEDS

Return to:
Janina Stodolski, Attorney-at-Law
166 Concord Street
Manchester, NH 03104-4896

## Commissioner's Deed

KNOW ALL PERSONS BY THESE PRESENTS, that I, Daniel W. O'Shaughnessy, of 573 Maple Street, Manchester, NH 03104, Commissioner to convey real estate pursuant to the Order of the Rockingham County Judicial Branch – Family Division @ Portsmouth Location, dated March 30, 2005, "In the Matter of Joseph H. Mastromarino and Judith V. Mastromarino", Docket Number 2003-M-0076, grant to Joseph H. Mastromarino of P. O. Box 654, Hampton, Rockingham County, New Hampshire all of the right, title and interest, including dower, curtesy, and homestead of Judith V. Mastromarino of 46 Mace Road, Hampton, Rockingham County, New Hampshire, in the following described real estate located at 46 Mace Road, Hampton, Rockingham County, New Hampshire:

A CERTAIN TRACT OR PARCEL OF LAND, WITH THE BUILDINGS THEREON, SITUATED ON MACE ROAD, IN THE TOWN OF HAMPTON, COUNTY OF ROCKINGHAM, STATE OF NEW HAMPSHIRE, BEING LOT 1 ON PLAN OF LAND ENTITLED, "SUBDIVISION PLAN OF LAND FOR MACE HEIRS, ROGER W. MACE, GWENDOLYN N. MERCIER, GEORGE W. RYAN, DENNIS RYAN, CONNIE BETZ & CAROL LEE LOUGHLIN, LITTLE RIVER ROAD, HAMPTON, NH, SCALE:1" = 50', DATE: SEPTEMBER 17, 1991, RICHARD P. MILLETTE AND ASSOCIATES, 501 ISLINGTON STREET, PO BOX 4006, PORTSMOUTH, NH", BEING RECORDED IN THE ROCKINGHAM COUNTY REGISTRY OF DEEDS AS PLAN #D-21281, TO WHICH PLAN REFERENCE MAY BE MADE FOR A MORE PARTICULAR DESCRIPTION.

SUBJECT TO ANY AND ALL MATTERS AS SHOWN ON PLAN NO. D-21281, RECORDED IN THE ROCKINGHAM COUNTY REGISTRY OF DEEDS.

Being the same premises conveyed to Joseph H. Mastromarino and Judith V. Mastromarino by Warranty Deed of Sean Kelley a/k/a Sean F. Kelley dated April 20, 2000, and recorded the Rockingham County Registry of Deeds at Book 3468, Page 2457.

BK 4460 PG 1886

This conveyance is a transfer between spouses made pursuant to a final decree of divorce titled "In the Matter of Joseph H. Mastromarino and Judith V. Mastromarino", Docket No. 2003-M-0077 in the Rockingham County Judicial Branch – Family Division @ Portsmouth Location and therefore no real estate transfer tax stamps are required.

IN WITNESS WHEREOF, I have set forth my hand this 31st day of March 2005.

Daniel W. O'Shaughnessy, Esquire
Commissioner to Sell Real Estate

The State of New Hampshire
County of Hillsborough

Before me, the undersigned officer, personally appeared Daniel W. O'Shaughnessy and acknowledged the foregoing instrument to be his voluntary act and deed.

Denise D. Raymond
Justice of the Peace
My Commission Expires

# Exhibit B

BK 5619 PG 0693

MAIL TO

After Recording Return To:
Avenue 365 Lender Services, LLC
401 Plymouth Road
Suite 550
Plymouth Meeting, PA 19462

C/H
L-CHIP
ROA282066

**Redacted**

[Space Above This Line For Recording Data]

## MORTGAGE

MASTROMARINO
Loan #
PIN:
MIN:
MERS Phone: 1-888-679-6377

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **APRIL 20, 2015**, together with all Riders to this document.

**(B) "Borrower"** is **JOSEPH H. MASTROMARINO**. Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is **NEW PENN FINANCIAL, LLC**. Lender is a **LIMITED LIABILITY CORPORATION** organized and existing under the laws of **DE**. Lender's address is **4000 CHEMICAL ROAD, SUITE 200, PLYMOUTH MEETING, PA 19462**.

**(E) "Note"** means the promissory note signed by Borrower and dated **APRIL 20, 2015**. The Note states that Borrower owes Lender **FOUR HUNDRED FORTY-NINE THOUSAND FIVE HUNDRED AND 00/100** Dollars (U.S. **$449,500.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MAY 1, 2030**.

NEW HAMPSHIRE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
339.22      Page 1 of 14      Form 3030 1/01

BK 5619 PG 0694

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider
☐ 1-4 Family Rider     ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable ,federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to

BK 5619 PG 0695

MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS with mortgage covenants, and with power of sale, the following described property located in the **COUNTY** (Type of Recording Jurisdiction) of **ROCKINGHAM** (Name of Recording Jurisdiction):
**SEE ATTACHED LEGAL DESCRIPTION**
which currently has the address of **46 MACE RD, HAMPTON**, New Hampshire **03842** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

BK 5619 PG 0696

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually

BK 5619 PG 0697

analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not

BK 5619 PG 0698

protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to

BK 5619 PG 0699

Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain

coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an

agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in

**NEW HAMPSHIRE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
339.22                                                   Page 9 of 14                                                   **Form 3030 1/01**

BK 5619 PG 0702

Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and

NEW HAMPSHIRE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

BK 5619 PG 0703

obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic

BK 5619 PG 0704

Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

BK 5649 PG 0705

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail copies of a notice of sale in the manner provided by Applicable Law to Borrower and other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender shall deliver to the purchaser Lender's deed conveying indefeasible title to the Property, discharged of all rights of redemption by Borrower. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Discharge.** The Lender, within 60 days after this Security Instrument is satisfied and having reasonable charges tendered to the Lender, shall cause the discharge of this Security Instrument to be recorded in the registry of deeds where the Property lies. The recording fees associated with the discharge of this Security Instrument may be charged to the Borrower, if the Borrower received written disclosure that such fees would be so charged. The Lender shall provide written confirmation of the discharge within the 60-day period to the payor of the final payment in satisfaction of this Security Instrument.

**24. Releases.** Borrower, and Borrower's spouse, if any, release all rights of homestead in the Property and release all rights of curtesy and other interests in the Property.

**25. Attorneys' Fees.** Pursuant to New Hampshire Revised Statutes Annotated § 361-C:2, in the event that Borrower shall prevail in (a) any action, suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorneys' fees shall be awarded to Borrower. Further, if Borrower shall successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.

BK 5619 PG 0706

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_4/20/2015_

- BORROWER - JOSEPH H MASTROMARINO - DATE -

_4/20/2015_

LIUDMYLA SHEREPRIA - DATE -

Sherepera L.S.

[Space Below This Line For Acknowledgment]

STATE OF _N H_

COUNTY OF _Rockingham_

This instrument was acknowledged before me on _4-20-15_ by _Joseph H Mastromarino Luidmyla Shere Pera_

(Signature of person taking acknowledgment)

(Title or Rank) _Notary Public_

(Serial number, if any) _____

My Commission Expires: _Oct 6 2015_

Residing at _Raymond NH_

CHRISTOPHER PATEY, NP
Notary Public - New Hampshire
My Commission Expires October 6, 2015

MORTGAGE LOAN ORIGINATOR **STEVEN HOROWITZ**
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER 195011
MORTGAGE LOAN ORIGINATION COMPANY **NEW PENN FINANCIAL, LLC**
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER 3013

BK 5619 PG 0707

Escrow File No.: ████

## EXHIBIT "A" – LEGAL DESCRIPTION

THE FOLLOWING DESCRIBED REAL ESTATE LOCATED AT 46 MACE ROAD, HAMPTON, ROCKINGHAM COUNTY, NEW HAMOSHIRE:

A CERTAIN TRACT OR PARCEL OF LAND, WITH THE BUILDINGS THEREON, SITUATED ON MACE ROAD, IN THE TOWN OF HAMPTON, COUNTY OF ROCKINGHAM, STATE OF NEW HAMPSHIRE, BEING LOT 1 ON PLAN OF LAND ENTITLED, "SUBDIVISION PLAN OF LAND FOR MACE HEIRS, ROGER W. MACE, GWENDOLYN N. MERCIER, GEORGE W. RYAN, DENNIS RYAN, CONNIE BETZ & CAROL LEE LOUGHLIN, LITTLE RIVER ROAD, HAMPTON, NH, SCALE:1" = 50', DATE: SEPTEMBER 17, 1991, RICHARD P. MILLETTE AND ASSOCIATES, 501 ISLINGTON STREET, PO BOX 4006, PORTSMOUTH, NH", BEING RECORDED IN THE ROCKINGHAM COUNTY REGISTRY OF DEEDS AS PLAN #D-21281, TO WHICH PLAN REFERENCE MAY BE MADE FOR A MORE PARTICULAR DESCRIPTION.

SUBJECT TO ANY AND ALL MATTERS AS SHOWN ON PLAN NO. D-21281, RECORDED IN THE ROCKINGHAM COUNTY REGISTRY OF DEEDS.

BEING THE SAME PREMISES CONVEYED UNTO JOSEPH H. MASTROMARINO, BY VIRTUE OF DEED FROM DANIEL W. O'SHAUGHNESSY, ESQUIRE COMMISSIONER TO SELL REAL ESTATE DATED MARCH 31, 2005, RECORDED APRIL 5, 2005 IN BOOK 4460, PAGE 1885, ROCKINGHAM COUNTY, NH.

PARCEL-ID: 146/3///

# Exhibit C

**Book: 6500 Page: 428**

# 23022691    08/10/2023 12:07:15 PM
Book 6500 Page 428    Page 1 of 1
Register of Deeds, Rockingham County

RECORDING    10.00
SURCHARGE    2.00

When Recorded Return To:
~~Shellpoint Mortgage Servicing~~
C/O Nationwide Title Clearing, LLC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan Number ▮▮▮

# Redacted

## ASSIGNMENT OF MORTGAGE

SEND ALL OTHER BORROWER OR LOAN RELATED CORRESPONDENCE TO: Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603-0826, Toll-free Phone: (800) 365-7107

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR NEW PENN FINANCIAL, LLC, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, assign, transfer and set over the described Mortgage with all liens, and any rights due or to become due thereon to FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 3900 WISCONSIN AVE NW SUITE 125, WASHINGTON, DC 19462, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage dated 04/20/2015, was executed by JOSEPH H. MASTROMARINO AND LIUDMYLA SHEREPERA to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR NEW PENN FINANCIAL, LLC, ITS SUCCESSORS AND ASSIGNS, and recorded in ROCKINGHAM County, New Hampshire Registry of Deeds at Book 5619 and Page 693.

Property is commonly known as: 46 MACE RD, HAMPTON, NH 03842.

Dated on 8 / 2 /2023 (MM/DD/YYYY)
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR NEW PENN FINANCIAL, LLC, ITS SUCCESSORS AND ASSIGNS

By: _____
Susan Hicks
VICE PRESIDENT

Alan Baker
Witness

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA   COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on 8 / 2 /2023 (MM/DD/YYYY), by Susan Hicks as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR NEW PENN FINANCIAL, LLC, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained, He/she/they is (are) personally known to me.

_____
Vicky McCoy
Notary Public - STATE OF FLORIDA
Commission expires: 12/18/2026

VICKY MCCOY
NOTARY PUBLIC
STATE OF FLORIDA
COMM# HH 326470
EXPIRES: 12/18/2026

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)
DEFAULTAOMJ MIN ▮▮▮    MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O.
Box 2026, Flint, MI 48501-2026

# Exhibit D

Redacted

## FORECLOSURE DEED

Federal National Mortgage Association, having a usual place of business at 5600 Granite Parkway, Granite Park VII, Plano, TX 75027, holder of the following mortgage given by:

Joseph H. Mastromarino to Mortgage Electronic Registration Systems, Inc., as nominee for New Penn Financial, LLC, dated April 20, 2015 and recorded in the Rockingham County Registry of Deeds in Book 5619, Page 693.

By power conferred by said Mortgage and the laws of the State of New Hampshire and in consideration of the sum of FOUR HUNDRED SIXTY-SEVEN THOUSAND AND 00/100 ($467,000.00) DOLLARS grants to MG Holdings, LLC of P.O. Box 10088, Bedford, NH 03110, that portion of the Premises conveyed by said Mortgage and described more particularly in Exhibit "A" attached hereto.

Property Address: 46 Mace Rd, Hampton, NH 03842

Page 1

Executed this _____24TH_____ day of __OCTOBER_____, 2025.

Federal National Mortgage Association by NewRez LLC d/b/a Shellpoint Mortgage Servicing, its attorney-in-fact*

By   CHARLES CLUTE
Title   FORECLOSURE SUPERVISOR

*See the Limited Power of Attorney recorded with the Rockingham County Registry of Deeds in Book 6510, Page 1223.

State of _____SC_____

GREENVILLE____ County, ss.                                                    OCTOBER 24____, 2025

On this 24TH day of ____OCTOBER_____ 2025, before me, the undersigned notary public, personally appeared CHARLES CLUTE_____, proved to me through satisfactory evidence of identification, which were_____PERSONALLY KNOWN_____(form of identification), to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose as the free act and deed of Federal National Mortgage Association.

Capacity: (as ____FORECLOSURE SUPERVISOR_____ (Title) of NewRez LLC d/b/a Shellpoint Mortgage Servicing, as attorney-in-fact for Federal National Mortgage Association)

_____(Affix Seal)

Notary Signature  MEGAN LANGENWALTER

MEGAN LANGENWALTER
Notary Public State of South Carolina
My Commission Expires
March 27, 2034

My commission expires: 03/27/2034_____

Page 2

# Exhibit A

THE FOLLOWING DESCRIBED REAL ESTATE LOCATED AT 46 MACE ROAD, HAMPTON, ROCKINGHAM COUNTY, NEW HAMOSHIRE:

A CERTAIN TRACT OR PARCEL OF LAND, WITH THE BUILDINGS THEREON, SITUATED ON MACE ROAD, IN THE TOWN OF HAMPTON, COUNTY OF ROCKINGHAM, STATE OF NEW HAMPSHIRE, BEING LOT 1 ON PLAN OF LAND ENTITLED, "SUBDIVISION PLAN OF LAND FOR MACE HEIRS, ROGER W. MACE, GWENDOLYN N. MERCIER, GEORGE W. RYAN, DENNIS RYAN, CONNIE BETZ & CAROL LEE LOUGHLIN, LITTLE RIVER ROAD, HAMPTON, NH, SCALE:1" = 50', DATE: SEPTEMBER 17, 1991, RICHARD P. MILLETTE AND ASSOCIATES, 501 ISLINGTON STREET, PO BOX 4006, PORTSMOUTH, NH", BEING RECORDED IN THE ROCKINGHAM COUNTY REGISTRY OF DEEDS AS PLAN #D-21281, TO WHICH PLAN REFERENCE MAY BE MADE FOR A MORE PARTICULAR DESCRIPTION.

SUBJECT TO ANY AND ALL MATTERS AS SHOWN ON PLAN NO. D-21281, RECORDED IN THE ROCKINGHAM COUNTY REGISTRY OF DEEDS.

BEING THE SAME PREMISES CONVEYED UNTO JOSEPH H. MASTROMARINO, BY VIRTUE OF DEED FROM DANIEL W. O'SHAUGHNESSY, ESQUIRE COMMISSIONER TO SELL REAL ESTATE DATED MARCH 31, 2005, RECORDED APRIL 5, 2005 IN BOOK 4460, PAGE 1885, ROCKINGHAM COUNTY, NH.

PARCEL-ID: 146/3///

# Redacted

## AFFIDAVIT REQUIRED BY N.H. R.S.A 479:26

I, Autumn Sarzana, Esquire of Harmon Law Offices, PC as attorneys for Federal National Mortgage Association, make oath and say that the principal and interest secured by the mortgage referred to in the foregoing deed were not paid or tendered or performed when due or prior to the sale, and that this office caused to be published on June 30, 2025, July 7, 2025 and July 14, 2025 in the The Union Leader, a newspaper with a general circulation in the town or county where the property is situated, a notice of which a true copy is attached hereto as Exhibit "A".

And I further on oath say that this office sent a copy of said notice on June 20, 2025 by certified mail, return receipt requested to:

Joseph H. Mastromarino
46 Mace Rd
Hampton, NH 03842

David Osterman
David S. Osterman
497 Hooksett Rd # 352
Manchester, NH 03104-2698

Tax Collector
Town of Hampton
100 Winnacunnet Road
Hampton, NH 03842

TD Bank, N.A.
2035 Limestone Road
Wilmington, DE 19808

Internal Revenue Service
Advisory Consolidated Receipts
7940 Kentucky Drive
Stop 2850F
Florence, KY 41042

Spouse of Joseph H. Mastromarino
46 Mace Rd
Hampton, NH 03842

Lawrence P. Sumski
Trustee
32 Daniel Webster Highway
Suite 15
Merrimack, NH 03054

U.S. Trustee
Office of the U.S. Trustee
James C. Cleveland Building
53 Pleasant Street, Suite 2300
Concord, NH 03301

all at their last known addresses. To the extent the IRS appears in the above notice list because of a recorded federal tax lien, the notice to the IRS complied with the requirements of IRC Title 26, Section 7425(c) and (d), and regulations thereunder.

I further on oath say that to the best of my knowledge and belief, the Mortgagors were not in the military or other service of the United States at the time of the foreclosure or within one calendar year prior to the foreclosure, or were members of the military service when the mortgage was executed, pursuant to the provisions of the Servicemembers Civil Relief Act.

And I further on oath say that no service of petition to enjoin the sale was filed in the Rockingham County Superior Court.

And I further on oath say that the auction sale on August 15, 2025 was postponed by public proclamation to October 6, 2025 at 1:00 PM, at which time and place upon the mortgaged premises Federal National Mortgage Association sold the mortgaged premises at public auction to the highest bidder, Thomas Traber of P.O. Box 10088, Bedford, NH 03110 for FOUR HUNDRED

SIXTY-SEVEN THOUSAND AND 00/100  ($467,000.00) DOLLARS, said auction having been conducted by a licensed auctioneer, Jeffrey Craig, of Commonwealth Auction Associates, Inc.

Said bid was then assigned by Thomas Traber to MG Holdings, LLC, P.O. Box 10088, Bedford, NH 03110. Evidenced by assignment of bid recorded herewith as Exhibit 'B

Subscribed and sworn to this 15th day of October, 2025.

By: _____

Autumn Sarzana, Esquire, as Attorney of Harmon Law Offices, P.C., counsel for *Federal National Mortgage Association*

**Commonwealth of Massachusetts**

Middlesex County, ss.                                                    October 15, 2025

On this 15th day of October 2025, before me, the undersigned notary public, personally appeared <u>Autumn Sarzana,</u> proved to me through satisfactory evidence of identification, which were <u>personal knowledge</u> (form of identification) to be the person whose name is signed on the preceding or attached document, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of (his) (her) knowledge and belief.

Capacity: (as <u>Attorney of Harmon Law Offices, P.C., *counsel for Federal National Mortgage Association*</u>)

_____ (Affix Seal)

Notary Signature

My commission expires: ____4\19\30____

# Exhibit A

## MORTGAGEE'S NOTICE OF SALE OF REAL PROPERTY

By virtue of a Power of Sale contained in a certain mortgage given by **Joseph H. Mastromarino** ( the Mortgagor(s)") to Mortgage Electronic Registration Systems. Inc . as nominee for New Penn Financial, LLC, dated April 20, 2015 and recorded in the Rockingham County Registry of Deeds in Book 5619, Page 693, (the "Mortgage"), which mortgage is held by Federal National Mortgage Association, the present holder of said Mortgage, pursuant to and in execution of said power and for breach of conditions of said Mortgage and for the purposes of foreclosing the same will sell at:

Public Auction
on
August 15, 2025
at
12:00 PM

Said sale being located on the mortgaged premises and having a present address of 46 Mace Rd. Hampton, Rockingham County, New Hampshire. The premises are more particularly described in the Mortgage.

For mortgagor's(s') title see deed recorded with the Rockingham County Registry of Deeds in Book 4460, Page 1885.

NOTICE

PURSUANT TO NEW HAMPSHIRE RSA 479:25, YOU ARE HEREBY NOTIFIED THAT YOU HAVE A RIGHT TO PETITION THE SUPERIOR COURT FOR THE COUNTY IN WHICH THE MORTGAGED PREMISES ARE SITUATED, WITH SERVICE UPON THE MORTGAGEE, AND UPON SUCH BOND AS THE COURT MAY REQUIRE TO ENJOIN THE SCHEDULED FORECLOSURE SALE.

The address of the mortgagee for service of process is Federal National Mortgage Association (Fannie Mae), Legal Department, Granite Park VII, 5600 Granite Parkway, Plano, TX 75024 and the name of the mortgagee's agent for service of process is R. Scott Luttrull.

You can contact the New Hampshire Banking Department by e-mail at nhbd@banking.nh.gov. For information on getting help with housing and foreclosure issues, please call the foreclosure information hotline at 1-800-437-5991 The hotline is a service of the New Hampshire Banking Department. There is no charge for this call.

The Property will be sold subject to all unpaid real estate taxes and all other liens and encumbrances which may be entitled to precedence over the Mortgage. Notwithstanding any title information contained in this notice, the Mortgagee expressly disclaims any representations as to the state of the title to the Property involved as of the date of the notice of the date of sale. The property to be sold at the sale is "AS IS WHERE IS".

TERMS OF SALE

A deposit of Ten Thousand ($10,000.00) Dollars in the form of a certified check or bank treasurer's check or other check satisfactory to Mortgagee's attorney will be required to be delivered at or before the time a bid is offered. The successful bidder(s) will be required to execute a purchase and sale agreement immediately after the close of the bidding. The balance of the purchase price shall be paid within thirty (30) days from the sale date in the form of a certified check, bank treasurer's check or other check satisfactory to Mortgagee's attorney. The Mortgagee reserves the right to bid at the sale, to reject any and all bids, to continue the sale and to amend the terms of the sale by written or oral announcement made before or during the foreclosure sale. The description of the premises contained in said mortgage shall control in the event of an error in this publication.

Dated at Newton, Massachusetts, on June 23, 2025.

Federal National Mortgage Association By its Attorney, Lori Bolduc Harmon Law Offices, P.C. PO Box 610389 Newton Highlands, MA 02461 617-558-0500 27910

(UL - June 30; July 7, 14)

## ASSIGNMENT OF BID

Date:        10/6/2025

Assignor:    Thomas Traber

Assignee:    MG Holdings, LLC

Property:    46 Mace Rd, Hampton, NH 03842

I,  _Thomas Traber___ , being the highest bidder of the above referenced property at the foreclosure auction on _October 6th, 2025_____ , and having executed a memorandum for the purchase of said property, hereby for consideration received, assign all my rights in said memorandum of purchase for the property to _MG Holdings, LLC_____ .

_Thomas Traber_____
Assignor


Assignee's vesting information is as follows:


MG Holdings, LLC
PO Box 10088
Bedford, NH 03110

# Exhibit E

**Book: 6190 Page: 1767**

E # 20061196      11/05/2020 02:42:56 PM
Book 6190 Page 1767          Page 1 of 6
Register of Deeds, Rockingham County

| LCHIP | ROA525840 | 25.00 |
|---|---|---|
| RECORDING | | 30.00 |
| SURCHARGE | | 2.00 |

When recorded, return to:
TD Bank, N.A.
Attn: Document Management
2059 Springdale Road
Cherry Hill, NJ 08003

# Redacted

LOAN #: ███

## MORTGAGE

THIS MORTGAGE is made this  16th     day of  August, 2020        between the Mortgagor,
JOSEPH H MASTROMARINO

(herein "Borrower"), and

the Mortgagee TD Bank, N.A., a Chartered Bank

organized and
whose address is
existing under the laws of  Delaware,
2035 Limestone Road, Wilmington, DE 19808

(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S.  $160,000.00,
which indebtedness is evidenced by Borrower's note dated  August 15, 2020                    and
extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and
interest, with the balance of indebtedness, if not sooner paid, due and payable on
August 20, 2030.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest
thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to
protect the security of this Mortgage; and the performance of the covenants and agreements of
Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender, with power
of sale, the following described property located in the  County
[Type of Recording Jurisdiction] of  Rockingham                    [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: 146-3

NEW HAMPSHIRE - SECOND MORTGAGE - 1/80 - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3829
Modified by Ellie Mae, Inc.                                                              Initials: _____
Ellie Mae, Inc.                            Page 1 of 5                                   NHVSECDE  0312
                                                                                        NHVSECDE (CLS)
                                                                                        08/13/2020 08:53 AM PST

**Book:6190 Page:1771**

**LOAN #** ▮▮▮▮▮▮

**22. Riders.** All Riders to this document are executed by Borrower. The following Riders are to be executed by the Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]
☐ 1-4 Family Rider    ☐ Biweekly Payment Rider

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Signed, sealed and delivered in the presence of:

_____ (Seal)
**MARK A MASTROMARINO, ATTORNEY IN FACT JOSEPH H MASTROMARINO**    **DATE**    <==== POA not found on record

**State of NEW HAMPSHIRE,**    **ROCKINGHAM County ss:**

This instrument was acknowledged before me on ___8/15/20___
(date) by MARK A MASTROMARINO, ATTORNEY IN FACT JOSEPH H MASTROMARINO (name (s) of person(s)).

My commission expires: _Jul 10, 24_    _O. Simon_
    (Signature of Notarial Officer)

    _FSR_
    Title (and Rank)

> OLIVER D SIMON
> Notary Public - New Hampshire
> My Commission Expires Jul 10, 2024

Lender: TD Bank, N.A.
NMLS ID: 399800
Loan Originator: Papus Saah
NMLS ID: 1534632

NEW HAMPSHIRE - SECOND MORTGAGE - 1/80 - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3804
Modified by Ellie Mae, Inc.    Initials: _____
Ellie Mae, Inc.    Page 5 of 5    NHVSECDE  0312
    NHVSECDE (CLS)
    08/13/2020 08:53 AM PST

**Book:6190 Page:1772**

Loan No #
Order #
Name:  Joseph H Mastromarino
Property Address:    46 Mace Rd
                     Hampton, NH 03842

## EXHIBIT A

### Legal Description

A certain tract or parcel of land, with the buildings thereon, situated on Mace Road, in the Town of Hampton, County of Rockingham, State of New Hampshire, being lot 1 on plan of land entitled, "subdivision plan of land for Mace Heirs, Roger W. Mace, Gwendolyn N. Mercier, George W. Ryan, Dennis Ryan, Connie Betz & Carol Lee Loughlin, Little River Road, Hampton, NH, scale:1" = 50', date: September 17, 1991, Richard P. Millette and associates, 501 Islington Street, PO box 4006, Portsmouth, NH", being recorded in the Rockingham county registry of deeds as plan #D-21281, to which plan reference may be made for a more particular description.

Assessor's Parcel No:    146-3

*MaM*

# Exhibit F

**Book: 6217 Page: 2607**

| Form 668 (Y)(c)<br>(Rev February 2004) | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** |
|---|---|

| Area·<br>SMALL BUSINESS/SELF EMPLOYED AREA #1<br>Lien Unit Phone. (800) 913-6050 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

For Optional Use by Recording Office

# 21000605        01/05/2021 11:37:46 AM
Book 6217 Page 2607        Page 1 of 1
Register of Deeds, Rockingham County

RECORDING        10.00
SURCHARGE        2.00

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer JOSEPH H MASTROMARINO

Residence        PO BOX 654
HAMPTON, NH 03843-0654

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2014 | XXX-XX- | 09/16/2019 | 10/16/2029 | 204696.48 |
| 1040 | 12/31/2015 | XXX-XX- | 08/19/2019 | 09/18/2029 | 190217.87 |
| 1040 | 12/31/2016 | XXX-XX- | 10/14/2019 | 11/13/2029 | 217832.63 |
| 1040 | 12/31/2017 | XXX-XX- | 02/24/2020 | 03/26/2030 | 214970.07 |
| 1040 | 12/31/2019 | XXX-XX- | 11/09/2020 | 12/09/2030 | 1850.06 |

Place of Filing

Register of Deeds
ROCKINGHAM County
Kingston, NH 03848

Total | $ | 829567.11

This notice was prepared and signed at _____ MANHATTAN, NY _____ , on this,

the ___ 15th ___ day of ___ December ___ , 2020 .

| Signature<br>for JENNIFER S GREEN | Title<br>REVENUE OFFICER<br>(603) 570-0586 | 21-04-1421 |
|---|---|---|

(NOTE  Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev Rul 71-466, 1971 - 2 C B 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev 2-2004)
CAT NO 60025X